**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CAROLYNE BALSAMIDES, and her Husband, MICHAEL BALSAMIDES, | : | |
| | : **OPINION** | |
| Plaintiffs, | : | |
| | : Civ. No. 06-5676 (WHW) | |
| v. | : | |
| WAL-MART STORES, INC., et al., | : | |
| Defendants. | : | |

**Walls, Senior District Judge**

Defendant Wal-Mart Stores, Inc. ("Wal-Mart") moves for summary judgment on all claims against plaintiffs Carolyne Balsamides and Michael Balsamides. The plaintiffs oppose the motion. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motion is decided without oral argument. Defendant's motion for summary judgment is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts viewed in the light most favorable to the plaintiffs are: On March 17, 2005, Carolyne Balsamides ("plaintiff") and her godmother, Lynn Markus, were shopping in a Wal-Mart store located in Woodbridge, New Jersey. Plaintiff had been in the store for approximately half an hour when she slipped and fell on spilled baby oil in the beauty aisle. The baby oil was clean and clear, and Balsamides did not see the oil before she fell. After she fell, Balsamides noticed that oil was under her entire body. (Pl. Ex. A, Balsamides Dep. 19:6-7.) She testified

1

**NOT FOR PUBLICATION**

that there was there "quite a bit [of oil] towards the end of that aisle," and that the oil was "pretty much" covering the width of the aisle.  (Id. at 20:10-17.)  The plaintiff testified that the oil did not appear to have foot prints in it, and she did not know whether it had shopping cart tracks through it.  (Id. at 21:2-5.)  She was unable to identify the source of the spilled oil.  (Id. at 21:12-21.)  She did not see any broken bottles of baby oil on the floor, or any open bottles of baby oil on a nearby shelf.  (Id.)

Lynn Markus was walking behind Balsamides pushing a cart.  (Id. at 18:2-4; Pl. Ex. C, Markus Aff. ¶ 3.)  She witnessed Balsamides fall.  Markus did not see the baby oil on the floor before Balsamides fell.  (Id.)  Afterwards, she noticed baby oil spilled over a large area in the aisle.  (Id. at ¶ 4.)  She noticed shopping cart tracks running through the oil, which dragged the oil out from the spill area.  (Id. at ¶ 5.)  She said it appeared that there were multiple shopping cart tracks through the oil.  (Id.)

The beauty aisle was located near the pharmacy.  After she fell, the plaintiff sat on a bench in the pharmacy area.  The assistant store manager, Jacqueline Perun, came over to speak with her.  After she took plaintiff's information for the Incident Report, she went to the location of the spill.  (Df. Ex. C, Perun Dep. 30:13-21.)  Perun testified that the spill was difficult to locate, because it was clear, but she eventually found it.  (Id.)  The Incident Report contains very little detail about the spill; it only indicates that there was a "baby oil spill" and that "someone dripped oil" in the aisle.  (Df. Ex. D, Incident Report.)

The plaintiff states that another Wal-Mart customer came up to her as Perun was taking her report.  This woman stated in the presence of Perun, Balsamides and Markus that she saw the oil spill in the beauty aisle.  (Pl. Ex. A, Balsamides Dep. 23:6-24:5; Pl. Ex. C, Markus Aff. ¶ 6.)

**NOT FOR PUBLICATION**

She waited "quite a while" in the aisle hoping to spot a passing Wal-Mart employee, but when no employee came, she went to the courtesy desk to report the spill.  (Id.)

Perun also testified generally about the training that all Wal-Mart employees receive on store safety issues (Df. Ex.C, Perun Dep. 9:20-11:16).  She said that safety inspections are performed daily before the store's opening and periodically throughout the day (Id. at 17:21-21:11).  However, she did not testify specifically about any inspections done on the day of plaintiff's fall.

<b>STANDARD OF REVIEW</b>

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit.  See Anderson, 477 U.S. at 248.  The moving party must show that the non-moving party has failed to "set forth," by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial."  See Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Fed. R. Civ. P. 56(e)).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" in question. Scott, 550 U.S. at 380 (citing Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue of fact

**NOT FOR PUBLICATION**

for trial.  See Anderson, 477 U.S. at 249.  In so doing, the court must construe the facts and

inferences in the light most favorable to the non-moving party.  Curley v. Klem, 298 F.3d 271,

277 (3d Cir. 2002).  To survive a motion for summary judgment, a non-movant must present

more than a mere "scintilla of evidence" in his favor.  Woloszyn v. Cnty. of Lawrence, 396 F.3d

314, 319 (3d Cir. 2005).  The opposing party must set forth specific facts showing a genuine

issue for trial.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).

## DISCUSSION

The Court's analysis begins by restating the applicable basic legal principle – that Wal-

Mart owed the plaintiff, as a business invitee, "the duty of reasonable care to provide a

reasonably safe place to do that which was within the scope of the invitation."  Nisivoccia v.

Glass Gardens, Inc., 175 N.J. 559, 563 (2003) (citing Hopkins v. Fox & Lazo Realtors, 132 N.J.

426, 433 (1993)).  The duty of due care requires a business owner to discover and eliminate any

possible dangerous conditions or circumstances, and to maintain the premises in safe condition.

Brown v. Racquet Club of Bricktown, 95 N.J. 280, 291 (1984).  The business owner must also

avoid creating conditions that would render the premises dangerous or unsafe.  Bozza v.

Bornado, Inc., 42 N.J. 270, 359-60 (1964); O'Shea v. K. Mart Corp., 304 N.J. Super. 489, 492-

93 (App. Div. 1997).   "Ordinarily, an injured plaintiff asserting a breach of that duty must prove,

as an element of the cause of action, that the defendant had actual or constructive knowledge of

the dangerous condition that caused the accident."  Nisivoccia, 175 N.J. at 563 (citing Brown, 95

N.J. at 291)).

However, equitable considerations have motivated the New Jersey courts "to relieve the

plaintiff of proof of that element in circumstances in which, as a matter of probability, a

dangerous condition is likely to occur as a result of the nature of the business, the property's

**NOT FOR PUBLICATION**

condition, or a demonstrable pattern of conduct or incidents." Nisivoccia, 175 N.J. at 563.  This

"mode-of-operation" rule provides that "when a substantial risk of injury is inherent in a business

operator's method of doing business, the plaintiff is relieved of showing actual or constructive

notice of the dangerous condition." Nisivoccia, 175 N.J. at 564 (citation omitted).  The New

Jersey courts "have accorded the plaintiff an inference of negligence, imposing on the defendant

the obligation to come forward with rebutting proof that it had taken prudent and reasonable

steps to avoid the potential hazard." Nisivoccia, 175 N.J. at 563-64.  Then, "the question of the

adequacy of the store's efforts to exercise due care [is] one for the jury." Id. at 566.

This rule applies to cases involving "self-service" retail stores.  See O'Shea, 304 N.J.

Super. at 493.  "Self service" has been defined as "a mode of operation designed to allow the

patron to select and remove the merchandise from the premises without intervention from any

employee of the storekeeper." Craggan v. Ikea USA, 332 N.J. Super. 53, 63 (App. Div. 2000).

The beauty aisle in Wal-Mart is undoubtedly self-service.  Customers are free to browse, pick up

items and put them down, and carry items away for purchase.  Wal-Mart employees do not help

customers select merchandise, or retrieve it for them.  While the seminal mode-of-operation

cases involved supermarkets, see Wollerman v. Grand Union Stores, Inc., 47 N.J. 426 (1966)

(plaintiff slipped on string bean in produce area); Nisivoccia, 175 N.J. 559 (2003) (plaintiff

slipped on grapes in check-out area), the argument that the rule applies only to supermarket slip-

and-fall cases has been rejected by the New Jersey courts.  See Valentin v. Toys "R" Us, Inc.,

2010 WL 3075749, at *2 (App. Div. July 15, 2010) (finding that the motion "judge was incorrect

in concluding that the mode-of-operation rule could not apply to a self-service retailer such as

Toys "R" Us.").  Indeed, the rule has been expanded and liberally applied in many contexts

beyond supermarkets.  See e.g. Craggan, 332 N.J. Super. at 63 (finding that the mode-of-

**NOT FOR PUBLICATION**

operation rule applied where plaintiff tripped on loose string in loading area); O'Shea, 304 N.J.

Super. at 494 (finding that mode-of-operation rule applied where plaintiff was struck by a golf

bag that she was attempting to remove from a shelf).

Here, the Court finds that the mode-of-operation rule is appropriate, precisely for the

reasons Wal-Mart states in its brief. Wal-Mart argues that the plaintiff "could not identify the

source of the oil," and cannot prove "whether the oil had been present on the floor for five

seconds or five hours before Plaintiff encountered it." (Df. Br. at 5.) The burden shifting of the

mode-of-operation rule recognizes that a plaintiff may not know the source of the dangerous

condition that caused his or her injury. In Nisivoccia, the plaintiff fell on loose grapes. The

court noted that the "proofs did not show how the grapes came to be on the floor or how long

they had been there." 175 N.J. at 561. In Valentin, the plaintiff slipped on a "jelly-like"

substance in an aisle of Toys "R" Us. 2010 WL 3075749, at *1. She did not know the identity

of the substance or how it came to be spilled. Id. at *3. The court said that the plaintiff was

"hardly in a position to know precisely [what] was the neglect." Id. (quoting Wollerman, 47 N.J.

at 429). "It is just, therefore, to place 'the onus of producing evidence upon the party who is

possessed of superior knowledge or opportunity for explanation of the causative circumstances.'"

Id. (citations omitted). Here, Balsamides does not know, and cannot know, how the baby oil

was spilled or how long it was on the floor. The mode-of-operation rule properly places the onus

upon Wal-Mart, the party with superior knowledge, to show that it exercised due care.

The defendant argues that Perun's testimony about Wal-Mart's safety procedures is

sufficient for summary judgment. It is not. First, the testimony provided was very general, and

gave no specifics regarding safety procedures conducted in the aisle in which plaintiff fell, or

even in the store that day. See Craggan, 332 N.J. Super. at 59 (noting that the janitorial

NOT FOR PUBLICATION

supervisor "testified only as to the general process of the services provided," and "[t]here was no testimony concerning condition of IKEA's loading area the night before plaintiff's accident, or the cleaning activities actually performed the night prior.").  Furthermore, Wal-Mart's emphasis on the plaintiff's inability to prove that Wal-Mart had "actual or constructive notice" of the spill is misplaced.  In O'Shea, the defendant produced an affidavit from the store manager, "who offered that 'routine periodic inspections' [were] made during business hours and on the date in question," and "there was no notice of any problem with the golf display."  304 N.J. Super at 493.  The Court found that the defendant's "focus [was] too narrow.  The issue is not simply one of notice; the issue concerns a condition created by the proprietor for which notice is not required."  Id.  The O'Shea court found that the circumstances of that case created "an inference establishing a dangerous condition sufficient to defeat a motion for summary judgment."  Id. at 494.   The Court finds similarly here.  The mode-of-operation rule is applicable, and the defendant's motion for summary judgment is denied.

## CONCLUSION

The Court finds that the circumstances of the plaintiff's fall and the self-service nature of the defendant's store warrant a mode-of-operation inference in this case.  The defendant's argument that the plaintiff has not shown that Wal-Mart had actual or constructive notice of the baby oil is moot, because the plaintiff is not required to show actual or constructive notice of the dangerous condition.  Perun's testimony concerning Wal-Mart's general safety procedures is insufficient to warrant summary judgment.  The defendant's motion for summary judgment is denied.

**s/ William H. Walls**
United States Senior District Judge